IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRECIOUS SILVA,

    Plaintiff,

v.                                                                                                                                   CIV 16-0956 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 19*), filed April 5, 2017. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 8*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will grant the Motion.

**I.**     **Introduction**

Plaintiff asserts that she became disabled and unable to sustain any substantial gainful activity at the age of 26 due to various impairments. The Administrative Law Judge ("ALJ") assigned to review her case reached the opposite conclusion. Plaintiff now appeals to this Court, asserting that the ALJ improperly discounted the opinion of her treating nurse practitioner and relied on unsound information provided by the vocational expert ("VE"), who testified that Plaintiff can still work. The Court agrees that the ALJ's reasons for discounting the opinions of Plaintiff's treating nurse practitioner do not withstand scrutiny, and therefore will remand on this basis.

## II.     Procedural History

On September 24, 2012, Plaintiff protectively filed applications with the Social Security Administration for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. *AR* at 79-80, 187-88.[1] Plaintiff alleged a disability onset date of May 12, 2012, the day she stopped working, due to diabetes, migraines, Cushing's syndrome, degenerative disk disease, polycystic ovary syndrome ("PCOS") and recurring abscesses. *AR* at 208, 219. Plaintiff had most recently worked as a caregiver for the disabled. *AR* at 55. She testified that she can no longer do this kind of work because it was too hard on her back, she "was calling in constantly due to the pain" and because she was "getting a lot of abscesses that [she] had to get removed surgically." *AR* at 56. Plaintiff has neither looked for work nor engaged the services of the state Division of Vocational Rehabilitation since she stopped working in this capacity. *AR* at 56.

The agency denied Plaintiff's claims initially and upon reconsideration, and she requested a *de novo* hearing before an administrative law judge. *AR* at 79-124, 140. ALJ Barry O'Melinn held an evidentiary hearing on August 6, 2014, at which Plaintiff and Vocational Expert ("VE") Diane Weber testified. *AR* at 50-78. Plaintiff was represented by Ruth Cohen, of the office of Bill Gordon & Associates, at the hearing. *AR* at 51. Ms. Cohen stipulated to Ms. Weber's credentials. *AR* at 72.

The ALJ issued an unfavorable decision on February 2, 2015. *AR* at 30-43. Ms. Cohen subsequently withdrew from Plaintiff's case, *AR* at 29, and Plaintiff's current counsel, Michael Armstrong, entered his appearance on March 9, 2015. *AR* at 26-28.

---

[1] Documents 12-1 through 12-11 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council denied on June 24, 2016. *AR* at 28, 1-4. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

At Step One of the sequential evaluation process, ALJ O'Melinn found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. *AR* at 35. At Step Two, he determined that Plaintiff has the severe impairments of "diabetes mellitus; hypertension; obesity; back disorder; hypothyroid; headaches; polyarthralgias;

---

[2] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

depression; and fibromyalgia." *AR* at 35. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 36-37.

When a claimant does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC "is the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Plaintiff retains the RFC to

> perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and SSR 83-10 specifically as follows: the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks and she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. Claimant must never climb ladders, ropes or scaffolds. She is limited to occasional climbing of ramps, stairs, balancing, stooping, kneeling, crouching and crawling. She must avoid concentrated exposure to extreme cold, heat, exposure to operation control of moving machinery, unprotected heights and hazardous machinery. The claimant can understand, carry out, and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and works situations, deal with routine changes in work setting, maintain concentration persistence and pace of up to and including 2 hours at a time with normal breaks throughout the workday.

*AR* at 37-38.

Employing this RFC at Steps Four and Five, and relying on the unchallenged testimony of the VE, the ALJ determined that Plaintiff is unable to perform her past relevant work as a home attendant, cashier, or salesperson. *AR* at 41. However, the ALJ found that there are jobs that exist in significant numbers in the national economy

4

that Plaintiff can perform despite her limitations. *AR* at 41-42. Specifically, the ALJ determined that Plaintiff retains the residual functional capacity to work as an addresser, final assembler, and as a charge account clerk. *AR* at 42. Accordingly, the ALJ determined that Plaintiff is not disabled and denied benefits. *AR* at 42-43.

### III. Legal Standards

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

### IV. Analysis

#### A) Weight Assigned to Certified Nurse Practitioner (CNP) Skiles' Opinions

CNP Aaron Skiles began treating Plaintiff on February 7, 2014. *AR* at 1622. At the new patient exam, Plaintiff reported that she was a poorly-compliant diabetic, was experiencing blood in her stool, and had a history of degenerative disc disease. *AR* at 1622. CNP Skiles assessed Plaintiff with uncontrolled diabetes, morbid obesity, back pain and melena stools. *AR* at 1624. He prescribed Lantus and diabetes management, diet, weight loss and physical therapy, and ordered a colonoscopy[3] and endocscopy. *AR* at 1624-25.

Plaintiff followed-up with CNP Skiles on February 28, 2014. *AR* at 1616. In addition to her previous complaints, Plaintiff reported a history of migraines. *AR* at 1616. CNP Skiles assessed Plaintiff with uncontrolled diabetes, hypothyroidism,

---

[3] Plaintiff underwent a colonoscopy on March 18, 2014; the results were normal. *AR* at 1630.

hypovitaminosis D, low iron saturation, elevated inflammatory markers and migraines. *AR* at 1620. He renewed her lispro insulin, started her on levothyroxine, vitamin D and ferrous sulfate, referred her to rheumatology for additional workup of autoimmune disorders, and refilled Fioricet and Phenergan for Plaintiff's migraines. *AR* at 1621.

Plaintiff reported to physical therapy on April 11, 2017. *AR* at 1832. She presented with low back pain, decreased core strength and decreased tolerance for physical activity. *AR* at 1831. Plaintiff had negative straight leg raise, slump, and squish tests. *AR* at 1831. In terms of functional limitations, Plaintiff was unable to stand from a standard chair without using her hands, was unable to ambulate greater than 2 miles without pain, and was unable to stand longer than 15 minutes to cook. *AR* at 1831. It was decided that Plaintiff would be treated one to two times per week for four weeks with therapeutic exercise, manual therapy, e-stem ultrasound, neuromuscular education, traction, and ice and/or heat as needed for pain and inflammation. *AR* at 1831-32. However, Plaintiff testified that physical therapy made her back "inflame more," *AR* at 58, and there is no evidence that Plaintiff followed up with further treatment.

On June 11, 2014, CNP Skiles filled out a "Medical Opinion Re: Ability to Do Work-Related Activities" form. *See AR* at 1840-43. On this form CNP Skiles indicated that Plaintiff's ability to lift and carry is restricted to a maximum of 10 pounds occasionally and less than 10 pounds frequently. *AR* at 1840. CNP Skiles further opined that Plaintiff is only able to stand, walk and sit less than two hours during an eight-hour workday and would require a change in position every five minutes while sitting. *AR* at 1840. CNP Skiles also opined that Plaintiff should never stoop, crouch, climb ladders or

crawl and only occasionally twist, climb stairs and kneel. *AR* at 1841. CNP Skiles indicated that this degree of limitation resulted from, among other things, Plaintiff's degenerative disc disease. *AR* at 1842. Ultimately, CNP Skiles indicated that Plaintiff would be absent from work more than three times a month due to her impairments or treatment, and was medically unable to work full-time. *AR* at 1842.

The ALJ gave "partial weight consistent with my decision herein" to CNP Skiles' opinions as stated on the form he had filled out. *AR* at 41. The ALJ gave two reasons for assigning this weight: (1) because CNP Skiles' "opinion is not from an acceptable medical source" and (2) because it is "inconsistent with the claimant's physical therapy notes." *AR* at 41 (citing Exhibit 12F/9). Plaintiff contends that these reasons are flawed, and, therefore, the ALJ failed to weigh CNP Skiles' opinion according to law. *Doc. 19* at 13-16. Specifically, Plaintiff posits that "[h]ad ALJ O'Melinn properly considered the opinion of CNP Skiles and incorporated the limitations in CNP Skiles's assessment, a more restrictive RFC finding would have resulted." *Id.* at 16. To be sure, if Plaintiff is as restricted as CNP Skiles opined, then she is unable to perform even sedentary work as defined by the regulations. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). Thus, it is imperative that the ALJ's reasons for discounting CNP Skiles' opinions are supported by the law and substantial evidence.

There is a distinction in the regulations between "acceptable" medical sources and those that are not. *See* SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006). "'Acceptable medical sources' include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* Any other medical provider is referred to as an "other source." *Id.* Medical evidence and opinions from "other

7

sources" are weighed under the factors stated in 20 C.F.R. § 404.1527(c)(1) through (c)(6) and § 416.927(c)(1) through (c)(6). *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) supportability of the opinion; (4) consistency of the medical opinion with the record as a whole; (5) specialization; and, (6) any "other factors" "which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014).

"[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); *see also* SSR 06-03p, 2006 WL 2329939 at *4. However, depending on the facts of the case, an opinion from a medical source that is not "acceptable" under the regulations may outweigh one that is. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); SSR 06-03p, 2006 WL 2329939 at *5. Ultimately, "[i]n the case of a nonacceptable medical source like [CNP Skiles], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (quoting *Keyes-Zachary*, 695 F.3d at 1164, in turn quoting SSR 06-03p, 2006 WL 2329939 at *6). Because the Court cannot follow the ALJ's reasons for discounting CNP Skiles opinions in this case, it must remand for further analysis.

As to the ALJ's first stated reason, while there is a distinction in the regulations between "acceptable medical sources" and those that are not, *see* SSR 06-03p, 2006 WL 2329939 at *2, this distinction is not applicable in the present case. Whereas the distinction is "necessary" because only "acceptable medical sources" can "establish the

8

existence of a medically determinable impairment," give "medical opinions"[4] and be considered "treating sources[5] . . . whose medical opinions may be entitled to controlling weight," *id.*, as the Commissioner recognized when promulgating SSR 06-03p: "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 232939 at *3. As such, while information from "other sources" "cannot establish the existence of a medically determinable impairment . . . information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) (explaining that while "other sources" cannot *diagnose* an impairment, their opinions are relevant to "the questions of *severity* and *functionality*") (citing *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007)). "Other medical evidence[,]" which "is evidence from a medical source that is not objective medical evidence or a medical opinion" as defined by the regulations, includes a claimant's medical history, clinical findings, and "treatment prescribed with response." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

---

[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

[5] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

In sum, it was only appropriate for the ALJ to consider the fact that CNP Skiles is not an acceptable medical source when deciding what weight to assign to his opinions to the extent that those opinions sought to establish the existence of a "medically determinable impairment" or where the opinions are "medical" under the regulations. *See* SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Thus, while he could not opine as to Plaintiff's "diagnosis, prognosis" or issue "a statement that reflects a judgment(s) about the nature and severity of [Plaintiff's] impairment(s)[,]" *see* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3), CNP Skiles *could* permissibly opine as to the functional effects thereof. This is exactly what he did. Accordingly, the ALJ's first reason for only affording partial weight to CNP Skiles' opinions is not supported by law.

Still, the Tenth Circuit has indicated that where an ALJ's other reasons are supported by the record, it is not improper for him to rely on the fact that a medical source is "nonacceptable" under the regulations. *See Fulton v. Colvin*, 631 F. App'x 498, 505 (10th Cir. 2015) (citing SSR 06-03p, 2006 WL 2329939 at *5). This is particularly true where contrary medical evidence comes from an "acceptable" medical source. *Id.*; *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). Of course, this was the ALJ's second reason for only assigning partial weight to CNP Skiles' opinions – that they were inconsistent with Plaintiff's physical therapy notes. *AR* at 41. The question, therefore, is whether this assertion is supported by substantial evidence.[6]

---

[6] Plaintiff, relying on *Lewis v. Berryhill*, 680 F. App'x 646 (10th Cir. 2017), argues that the ALJ's statement as to consistency is too vague. However, in *Lewis* the ALJ failed to indicate which

10

The Court finds that it is not. As Plaintiff correctly points out, the physical therapy notes that the ALJ relies on to diminish the weight he assigns to CNP Skiles' opinions are actually consistent with those opinions. At physical therapy, it was determined that Plaintiff was unable to ambulate greater than 2 miles without pain and was unable to stand longer than 15 minutes to cook. *AR* at 1831. Likewise, CNP Skiles opined that Plaintiff is unable to stand and walk for greater than two hours during an eight-hour workday. *AR* at 1840. These findings are not inconsistent. It is reasonable to assume that Plaintiff is able to walk two miles in two hours, and the physical therapist's finding that Plaintiff is unable to stand for fifteen minutes to cook is even more restrictive than were CNP Skiles' findings. *Compare AR* at 1831 *with* 1840. Moreover, contrary to the Commissioner's argument and the ALJ's interpretation, CNP Skiles found <u>no</u> manipulative restrictions, and again this finding was <u>consistent</u> with the physical therapist's notes. *Compare Doc. 20* at 6 *with AR* at 1841. Thus, the ALJ's second reason for according only partial weight to CNP Skiles' opinions is again unsupported by substantial evidence.

Attempting to salvage the ALJ's decision, the Commissioner posits that CNP Skiles' opinions were inconsistent with other record evidence. *See Doc. 20* at 6 (citing *AR* at 1825, 1838). Yet the ALJ focused exclusively on Plaintiff's physical therapy notes in analyzing the "consistency" with the records. *AR* at 41. Therefore, "[a]ffirming this post hoc effort to salvage the ALJ's decision would require [me] to overstep [my] institutional role and usurp essential functions committed in the first instance to the

---

part of the record the opinion was inconsistent with and it is this lack of specificity that the Tenth Circuit found troubling. *Id.* at 647. Because the ALJ specified which records were allegedly inconsistent in this case, *Lewis* is inapplicable.

administrative process." *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004). As such, the Commissioner's post-hoc argument is rejected.

The Commissioner also correctly notes that "there is no requirement in the regulations for direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Doc. 20* at 7 (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). This Court is not finding that the ALJ erred because he failed to match his RFC to a particular medical opinion. Rather, the error lies in the fact that the ALJ rejected some of CNP Skiles' findings without reasonable cause to do so.

Finally, the Commissioner argues that "[a]n ALJ is entitled to rely on all of the medical evidence, including that of nonexamining State agency medical and psychological consultants," *Doc. 20* at 7 (citing SSR 96-6p, 1996 WL 374180 at *1-2; *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008)), and that the ALJ was therefore permitted to accept the findings of the state agency physicians who reviewed the record and determined that Plaintiff was capable of sedentary work. *Doc. 20* at 8. The Court has no quibble with these statements in principle. To be sure, the ALJ may decide on remand to compare the opinions of the state agency physicians with those of CNP Skiles, as "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180 at *3. Nevertheless, because the ALJ did not rely upon the state agency physician findings to reject CNP Skiles' opinions, the Commissioner's argument is without merit at this juncture.

12

One last point bears mentioning. While an ALJ is not required to formalistically and explicitly apply all of the regulatory factors to the opinions of medical sources, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (citation omitted); 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016). The only regulatory factors the ALJ appears to have arguably touched on in this case are consistency and specialization. On remand, the ALJ should consider addressing additional factors, to further bolster his findings with regard to CNP Skiles' opinions. *See Andersen*, 319 F. App'x at 722 ("Although supportability might prove determinative, that can only be decided after consideration of the other factors.").

**B) Plaintiff's Other Claims of Error**

Plaintiff also argues that there is a conflict between her RFC and one of the jobs identified by the VE, and that the VE testimony regarding the number of available jobs is unreliable. *See Doc. 19* at 16-19. The Court will not address these issues at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). However, the Court cautions Plaintiff that she should bring these issues to the ALJ's attention in the first instance, rather than attempting to raise them for the first time on appeal.

## V.  Conclusion

The Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded for reevaluation of the weight to be afforded to the opinion of her treating CNP, as set forth above.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 19*) is **granted**.

**IT IS FURTHER ORDERED** that a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure be entered remanding this matter to the Acting Commissioner for further proceedings consistent with this opinion.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent